http://www.va.gov/vetapp16/Files5/1639929.txt

Citation Nr: 1639929 
Decision Date: 09/30/16 Archive Date: 10/13/16

DOCKET NO. 05-41 330 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUES

1. Entitlement to an initial rating greater than 10 percent for left hip arthritis.

2. Entitlement to an initial rating greater than 20 percent from June 29, 2009, to August 20, 2015, for a left foot disability, formerly rated as bilateral plantar fasciitis.

3. Entitlement to an initial rating greater than 20 percent from June 29, 2009, to August 20, 2015, for a right foot disability, formerly rated as bilateral plantar fasciitis.

4. Entitlement to an initial rating greater than 50 percent from August 20, 2015, for bilateral plantar fasciitis (previously rated separately, as noted above).

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

C. J. Houbeck, Counsel

INTRODUCTION

The Veteran served on active duty with the United States Army from March 2003 to September 2004, with additional service in the Army National Guard. His awards and decorations included the Global War on Terrorism Service Medal, the Army Achievement Medal, and the National Defense Service Medal.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2005 rating decision by the Columbia, South Carolina Regional Office (RO) of the United States Department of Veterans Affairs (VA), which in pertinent part granted service connection for left hip and bilateral foot disabilities, each rated 10 percent disabling from September 10, 2004.

In February 2010, the Veteran testified at a hearing held before the undersigned Veterans Law Judge (VLJ) at the RO; a transcript is associated with the claims file. Based in part on that testimony, the Board in August 2011 issued a decision denying an increased rating for a left hip disability, and granting separate 20 percent evaluations for the left and right feet, effective from June 29, 2009. 

The Board's August 2011 decision was then vacated in its entirety in April 2014, pursuant to a settlement agreement in National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F. 3d 1312 (Fed. Cir. 2013), involving an invalidated rule regarding the duties of a VLJ at hearing. The Board then issued a new decision in May 2014. At that time, the Board noted that the RO had already implemented the grant of increased ratings for the left and right foot disabilities; these remained in effect.
The Veteran appealed the May 2014 decision to the Court of Appeals for Veterans Claims (Court) which in April 2015, on the basis of a Joint Motion for Remand, vacated the above issues and remanded them to the Board for further action. All other issues addressed by Board in the May 2014 decision were abandoned by the Veteran, and the Board's determinations with regard to them are final. The Board remanded the above issues in June 2015, pursuant to the conclusions in the Joint Motion for Remand. 

Following the Board remand, a subsequent March 2016 rating decision combined the separate 20 percent ratings for right and left foot disabilities and increased the rating for bilateral plantar fasciitis to 50 percent, effective August 20, 2015. Based on this rating decision, the foot claims have been listed above as separate right and left foot issues for the period from June 29, 2009, to August 20, 2015, and as a single issue from August 20, 2015. Moreover, irrespective of the RO's actions, the issue remains before the Board because the increased rating was not a complete grant of the maximum benefits available. See AB v. Brown, 6 Vet. App. 35 (1993).

A claim for increased rating includes a claim for a finding of total disability based on individual unemployability (TDIU) where there are allegations of worsening disability and related unemployability. Rice v. Shinseki, 22 Vet. App. 447 (2009). As was noted in May 2014 and June 2015, the Board finds no basis for inference of a TDIU claim at this time; the evidence of record indicates that the Veteran continues to work and has not alleged unemployability.

The Veteran's file has been scanned, and converted from a hybrid paper and electronic file to a purely electronic file. The Board has reviewed the records and documents maintained in Virtual VA and the Veterans Benefits Management System (VBMS) to ensure consideration of the totality of the evidence. Any future consideration of this Veteran's case should take into consideration the existence of this electronic record.

The issue of entitlement to an increased rating for a left hip disability is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).
FINDINGS OF FACT

1. From June 29, 2009, to August 20, 2015, the Veteran's left foot plantar fasciitis was manifested by symptomatology and functional impairment that were moderately severe.

2. From June 29, 2009, to August 20, 2015, the Veteran's right foot plantar fasciitis was manifested by symptomatology and functional impairment that were moderately severe.

3. From August 20, 2015, the Veteran's bilateral plantar fasciitis is manifested by symptomatology that most closely approximates marked pronation of the feet and/or extreme tenderness of the plantar surfaces of the feet and pain that is accentuated on use of the feet and not improved by the use of an orthopedic shoe or appliance.

CONCLUSIONS OF LAW

1. For the period from June 29, 2009, to August 20, 2015, the criteria for the assignment of an initial disability rating greater than 20 percent for left plantar fasciitis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 3.159, 3.321, 4.40, 4.45, 4.71a, DCs 5276 and 5284 (2015).

2. For the period from June 29, 2009, to August 20, 2015, the criteria for the assignment of an initial disability rating greater than 20 percent for right plantar fasciitis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 3.159, 3.321, 4.40, 4.45, 4.71a, DCs 5276 and 5284 (2015).

3. For the period from August 20, 2015, the criteria for the assignment of an initial disability rating greater than 50 percent for bilateral plantar fasciitis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 3.159, 3.321, 4.40, 4.45, 4.71a, DCs 5276 and 5284 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

This appeal arises from the Veteran's disagreement with the initial ratings assigned for bilateral plantar fasciitis following the grants of service connection. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). No additional discussion of the duty to notify is therefore required.

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

The Board concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and post-service VA medical records are in the file. Private treatment records have been associated, to the extent possible. As such, the Board may proceed to adjudication without risk of prejudice to the Veteran.

As noted above, the Veteran also was afforded a hearing before the undersigned Veterans Law Judge (VLJ) during which he presented oral argument in support of his claims. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2011) requires that the VLJ/DRO who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ fully explained the issues on appeal during the hearing and specifically discussed the basis of the prior determination, the element(s) of the claims that were lacking to substantiate the claims for benefits, and suggested the submission of evidence that would be beneficial to the Veteran's claims. Significantly, neither the Veteran nor his representative have asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

With respect to claims for increased ratings, the duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the Veteran. See Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327 (a) (2015).

The RO provided the Veteran with multiple examinations for his service-connected bilateral foot disabilities, most recently in August 2015. The examination reports discussed the clinical findings and the Veteran's reported history as necessary to rate the disability under the applicable rating criteria. The examinations also discussed the impact of the disabilities on the Veteran's daily living. Based on the examinations and the fact there is no rule as to how current an examination must be, the Board concludes the examinations in this case are adequate upon which to base a decision. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). 

Based on the association of VA treatment records, the August 2015 VA examination report, and subsequent readjudication of the claims, the Board finds that there has been substantial compliance with its remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings that is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014). Percentage evaluations are determined by comparing the manifestations of a particular disorder with the requirements contained in the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2015). The percentage ratings contained in the Rating Schedule represent, as far as can practically be determined, the average impairment in earning capacity resulting from such disease or injury and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). VA has a duty to acknowledge and consider all regulations which are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusion. Schafrath, 1 Vet. App. at 589.

Where the issue involves the assignment of an initial rating for a disability following the initial award of service connection for that disability, as is the case here, the entire history of the disability must be considered and, if appropriate, staged ratings may be applied. Fenderson v. West, 12 Vet. App. 119 (1999). 

If there is a question as to which evaluation to apply to the Veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015).

The Veteran is service-connected for bilateral plantar fasciitis, which is a disability that is not listed under VA's rating schedule. Where the particular service-connected disability is not listed, it may be rated by analogy to a closely related disease in which not only the functions affected, but also the anatomical location and symptomatology are closely analogous. 38 C.F.R. §§ 4.20, 4.27 (2015); cf. Copeland v. McDonald, 27 Vet. App. 333, 337 (2015) (holding that "when a condition is specifically listed in [VA's scheduled for rating disabilities], it may not be rated by analogy."). 

In this instance, for the period on appeal from June 29, 2009, to August 20, 2015, the RO assigned separate 20 percent disability ratings, as analogous to acquired flatfoot under DC 5276. That said, the grants were based on order of the August 2011 Board decision, since vacated, that found separate 20 percent ratings were warranted for the bilateral feet under DC 5284, for moderately severe foot disabilities, other. 38 C.F.R. § 4.71a, DCs 5276 and 5284 (2015). In addition and as noted above, from August 20, 2015, the Veteran has been assigned a 50 percent disability rating for bilateral plantar fasciitis under DC 5276. The Veteran contends that the current ratings do not reflect the severity of his condition during the applicable time periods.

DC 5276 provides ratings for acquired flatfoot. Mild flatfoot with symptoms relieved by built-up shoe or arch support is rated as noncompensably (0 percent) disabling. Moderate flatfoot with weight-bearing line over or medial to the great toe, inward bowing of the atendo achillis, pain on manipulation and use of the feet, bilateral or unilateral, is rated 10 percent disabling. Severe flatfoot, with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities, is rated 20 percent disabling for unilateral disability, and is rated 30 percent disabling for bilateral disability. Pronounced flatfoot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement, and severe spasm of the tendo achillis on manipulation, that is not improved by orthopedic shoes or appliances, is rated 30 percent disabling for unilateral disability, and is rated 50 percent disabling for bilateral disability. 38 C.F.R. § 4.71a.

DC 5284, for "foot injuries, other" provides for a 30 percent rating for severe disability, a 20 percent rating for moderately severe disability, and a 10 percent rating for moderate disability. The Note following these criteria indicates that disability with actual loss of use of the foot should be rated 40 percent disabling. The words "moderate" and "severe" are not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decisions are "equitable and just." See 38 C.F.R. § 4.6 (2015). 

Medical evidence demonstrates that the Veteran has additional foot disabilities in addition to plantar fasciitis, to include flat feet, enthesophytes at the plantar and posterior calcaneus, and gout. These other foot disabilities have not been service-connected. The Board is precluded from differentiating between symptomatology attributed to a service-connected disability and a nonservice-connected disability in the absence of medical evidence which does so. See Mittleider v. West, 11 Vet. App. 181, 182 (1998).

On June 29, 2009, the Veteran appeared for a VA foot examination. At that time, the Veteran indicated that he could hardly walk due to pain in both heels. He reported that he could only stand from 15 to 30 minutes, and could only walk between one-quarter mile and 1 mile. His insoles were only partially effective in alleviating pain and the Veteran reported symptoms of pain, stiffness, fatigability, weakness, and lack of endurance in the heel. The Veteran denied swelling, heat, or redness. On examination, there was no objective evidence of painful motion, swelling, instability, weakness, or abnormal weight bearing. There was objective evidence of tenderness in the left heel. There was no evidence of malunion or nonunion of the tarsal or metatarsal bones. There was no muscle atrophy of the feet. The diagnoses were bilateral plantar fasciitis and bilateral degenerative arthritis of the great toe joints. The foot disabilities would have no significant effects on occupational functioning, but would prevent sports, have a severe effect on exercising, and have moderate effects on chores, shopping, recreation, and traveling.

Less than one month later, the Veteran sought treatment at the VA for continued throbbing foot pain. The VA physician indicated that the Veteran's foot pain manifested in "moderate" impact in the Veteran's ability to do household chores and to drive, and "severe" impact on the Veteran's ability to walk, to sleep, on his sex life, his social life, his employment, his appetite, and his mood. At the February 2010 hearing, the Veteran similarly noted that the pain in his feet was constant and sharp, requiring the use of a brace and insoles for comfort. 

In August 2012, the Veteran was diagnosed with decreased arch height with weight-bearing and was assessed with pes planus. The Veteran reported that he did benefit from the use of "air heels" and "Powerstep inserts."

On August 20, 2015, the Veteran underwent a VA examination for his bilateral feet. The examiner noted diagnoses of bilateral plantar fasciitis. The Veteran reported daily bilateral heel pain that was worse on weightbearing. The examination report indicated that the Veteran did not report flare-ups of pain, but there was functional loss due to an inability to stand or walk for extended periods of time. There was reported pain on use and manipulation of the feet, accentuated by use. There was no indication of swelling or callouses. The Veteran used orthotics bilaterally. There was extreme tenderness of the plantar surfaces of the bilateral feet that was not improved by orthopedic shoes or appliances. There was not decreased longitudinal arch height, marked deformity of either foot, marked pronation, or the weight-bearing line falling over or medial to the great toe. The foot pain contributed to functional loss in that there was pain on weight-bearing, disturbance of locomotion, and interference with standing. There was not pain, weakness, fatigability, or incoordination that significantly limited the Veteran's functional ability during flare-ups or when the foot was used repeatedly over time. The remaining functioning of the feet was not better served by amputation and the use of a prosthesis. 

From June 29, 2009, to August 20, 2015

The Board concludes that the objective medical evidence and the Veteran's statements regarding his symptomatology fail to show disability that more nearly approximates a rating greater than 20 percent for the period from June 29, 2009, to August 20, 2015. 

Although the Veteran clearly has pain on manipulation of his feet, the evidence of record has not demonstrated that the Veteran's bilateral foot disability manifested in any marked deformity of either foot (to include pronation or abduction), swelling on use, or callosities. Additionally, marked pronation, extreme tenderness of plantar surfaces, and inward displacement and severe spasm of the tendo achillis is not evident in the medical evidence. As noted above, during this time period the Veteran received, at the very least, partial relief from foot pain when using a brace or insoles. As no "severe" disability is shown under DC 5276, an increased rating under DC 5276 is not warranted for the period from June 29, 2009, to August 20, 2015, for either foot.

As to assigning an increased rating under DC 5284, the June 29, 2009, VA examination report and July 2009 VA treatment record demonstrated that the Veteran experienced worsened throbbing foot pain that manifested in increased functional impairment, to include "moderate" impact in his ability to do household chores and to drive, and "severe" impact on his ability to walk, to sleep, on his sex life, his social life, his employment, his appetite, and his mood. The Board concludes that the overall disability picture presented represents a moderately severe level of disability for each foot. The evidence of record does not demonstrate that the Veteran's right and left foot plantar fasciitis manifested in "severe" disability for the period prior to August 20, 2015. During that time period, the Veteran received partial relief from his foot pain when he used braces or insoles, stating at his hearing that the brace and insoles "help me out a lot." Although the Veteran's ability to stand and walk was impaired, he was ambulatory, and could at the very least stand for 15 minutes and walk a quarter mile before having to stop. Further, the objective medical evidence did not reflect that for the period from June 29, 2009, to August 20, 2015, his disability manifested in additional foot deformity such as pronation or abduction. As such, for the period from June 29, 2009, to August 20, 2015, a rating greater than 20 percent under DC 5284 would not be warranted for either foot. 

The Board notes that the Veteran's functional loss was considered. 38 C.F.R. §§ 4.40, 4.45. The Board observes that during this portion of the appellate time period the Veteran's orthopedic shoe inserts provided partial relief of symptoms. Moreover, there is no indication that the Veteran's bilateral foot disability resulted in additional range of motion loss, due to symptoms of pain, or as a result of other symptoms such as fatigue, weakness, lack of endurance, or incoordination following repetitive use. Medical records document moderate to severe limitations on various activities, which is the basis for the 20 percent ratings for each foot for this time period. Although the Veteran's ability to stand and walk was impaired during this period he was ambulatory, and could stand for 15 minutes and walk a quarter mile before having to stop. The Board sympathizes with the Veteran's difficulties, but the medical evidence establishes that for the appellate period prior to August 20, 2015, his primary disability of the feet stemmed from pain and the separate 20 percent disability ratings contemplate pain on manipulation and use of the feet. Accordingly, even considering the noted functional loss to the Veteran due to painful motion, for the period prior to August 20, 2015, his disability does not warrant a higher rating. See DeLuca, 8 Vet. App. 202.

As shown above, and as required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, regardless of whether they have been raised by the Veteran. The Board finds no provision upon which to assign a rating greater than the separate 20 percent ratings for the Veteran's right and left plantar fasciitis disabilities. Furthermore, as will be discussed in greater detail below the Board does not find that further staged ratings are warranted.

From August 20, 2015

For the period from August 20, 2015, the Veteran is in receipt of a 50 percent rating, which is the maximum rating permitted under DC 5276. As such, the Board must consider whether a higher or separate rating is warranted under any other DC. For the reasons discussed immediately below, the Board concludes that a higher or separate rating from August 20, 2015, is not warranted.

As to the applicability of a higher rating under DC 5284, the highest available rating is a 30 percent rating for each foot for severe foot injuries, other. Even were the Board to conclude that separate 30 percent ratings under DC 5284 were warranted, the separate 30 percent ratings combine to 50 percent and, as such, do not represent a higher rating for the Veteran's bilateral foot disabilities. See 38 C.F.R. § 4.25 (2015). As such, separate ratings under DC 5284 would not benefit the Veteran. To the extent that the Note to DC 5284 indicates that actual loss of use of the foot would warrant a 40 percent rating, the Veteran continues to be able to use his foot and the August 2015 VA examination report specifically found that the Veteran would not be better served by amputation of either foot with prosthesis. As such, the Veteran does not have the functional equivalent of loss of use of either foot.

The Board has considered the other foot DCs in 38 C.F.R. § 4.71a, to include DCs 5277-5283, but the lay and medical evidence of record demonstrates that the Veteran does not have the disabilities contemplated in these ratings or such problems are already contemplated for and compensated in the current 50 percent rating under DC 5276. The Veteran has noted arthritis of the feet; however, a rating under DC 5003 based on arthritis would constitute impermissible pyramiding, as the rating would be based on pain on motion and use of the feet, which is the basis of the 50 percent rating assigned under DC 5276. 

As from August 20, 2015, the Veteran is receiving the maximum rating contemplated for the feet based on symptomatology that includes pain resulting in limitation of motion, absent loss of use of the feet, the DeLuca provisions and those of 38 C.F.R. §§ 4.40, 4.45 are not for application. See Johnston v. Brown, 10 Vet. App. 80, 84-85 (1997).

The Board concludes that further staged ratings are not for application, based on the Veteran's reported symptoms during the relevant time periods. In reaching that conclusion, the Board acknowledges that the extreme tenderness of the bilateral plantar surfaces not improved by prosthesis documented in the August 20, 2015, VA examination likely did not have their onset on the day of the examination and, as such, an earlier date for the assignment of a 50 percent rating could be possible. However, the Board cannot find any specific date from which to apply the 50 percent rating prior to August 20, 2015. As noted above, as recently as 2012 the Veteran found orthopedic inserts to provide some measure of relief to his bilateral foot pain and no subsequent lay evidence or medical records establish a definitive date documenting the onset of extreme tenderness of the bilateral plantar surfaces not improved by prostheses or other problems sufficient to warrant a 50 percent disability rating. As such, the Board finds that the current effective date of August 20, 2015, for the 50 percent rating for the bilateral foot disabilities is appropriate and that further staged ratings are not warranted.

As shown above, and as required by Schafrath, 1 Vet. App. at 594, the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, regardless of whether they have been raised by the Veteran. In this case, the Board finds no provision upon which to assign a rating greater than 50 percent for the Veteran's bilateral plantar fasciitis for the period from August 20, 2015. 

Additional Considerations

The Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321 (b)(1) (2015). An exceptional case is said to include such factors as marked interference with employment or frequent periods of hospitalization as to render impracticable the application of the regular schedular standards. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular ratings for the service-connected bilateral plantar fasciitis are inadequate. A comparison between the level of severity and symptomatology of the Veteran's bilateral plantar fasciitis with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. Specifically, the Veteran has pain that makes extended standing and walking difficult and makes other activities challenging, such as getting out of bed. The assigned ratings contemplate these problems, in that they stem from his bilateral foot pain.

Finally, the Board notes that a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). In this case, the Veteran has not alleged, nor does the evidence indicate, that the combined effects of his service-connected disabilities require extraschedular consideration.

Further, there is no medical evidence indicating that the Veteran's service-connected disabilities combine or interact either with each other, either separately or together, in such a way as to result in further disabilities, functional impairment, or additional symptomatology not accounted for by the rating criteria applicable to each disability individually. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

The Board also has considered the applicability of 38 U.S.C.A. § 1114 (l) (special monthly compensation for the loss of use of both feet) and the other special monthly compensation provisions, based on the Veteran's reports of an inability to perform certain activities involving his feet, such as extended walking or standing; however, the objective evidence of record reflects that he retains significant range of motion of the ankles and sensation in the feet. Multiple VA examiners have concluded that he retains the use of the feet and that his feet symptoms do not result in functioning comparable to amputation with prosthesis. Clearly the Veteran retains the ability to use his feet, although sometimes for limited periods of time, and the Board finds that his limitations do not approximate the loss of use of those extremities as necessary for the award of special monthly compensation, given the evidence noted immediately above and in the body of the discussion.

In short, the rating criteria reasonably describe the Veteran's disability level and symptomatology. The Board, therefore, has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321 (b)(1) is not warranted.

ORDER

Entitlement to an initial rating greater than 20 percent from June 29, 2009, to August 20, 2015, for a left foot disability, formerly rated as bilateral plantar fasciitis, is denied.

Entitlement to an initial rating greater than 20 percent from June 29, 2009, to August 20, 2015, for a right foot disability, formerly rated as bilateral plantar fasciitis, is denied.

Entitlement to an initial rating greater than 50 percent from August 20, 2015, for bilateral plantar fasciitis (previously rated separately, as noted above), is denied.

 (CONTINUED ON NEXT PAGE)
REMAND

The Veteran also contends that his current 10 percent disability rating for left hip arthritis does not accurately reflect the severity of his condition.

This issue was remanded by the Board in June 2015, pursuant to the above-referenced Joint Motion for Remand to obtain a VA medical examination. An examination was conducted in August 2015. There was a noted diagnosis of degenerative arthritis. The Veteran did not report flare-ups of hip or thigh pain. On examination, active range of motion of the left hip was from 0 to 75 degrees of flexion, 0 to 30 degrees of extension, 0 to 30 degrees of abduction, 0 to 15 degrees of adduction, 0 to 20 degrees of external rotation, and 0 to 10 degrees of internal rotation. Pain was noted on examination during flexion, external rotation, and internal rotation and caused functional loss. There was pain with weight-bearing. The report did not indicate at what point during the arc of motion pain had its onset and the report did not include testing results for the right hip. The Veteran was unable to perform repetitive use testing of the left hip due to the pain being too intense. The examiner indicated that the examination was neither medically consistent nor inconsistent with the Veteran's statements describing functional loss with repetitive use over time. There was significant functional loss due to pain, but the examiner was unable to associate the limitation in terms of range of motion loss because there was no change in the range of motion as tested. Muscle strength testing of the left hip joint indicated normal muscle strength of the left hip extensors and abductors, with slightly limited muscle strength of 4 out of 5 in the left hip flexors. There was no muscle atrophy. There was no ankylosis. There was no malunion or nonunion of the femur, flail hip joint, or leg length discrepancy. The Veteran regularly used a cane. The Veteran was unable to do heavy physical work or work requiring constant standing.

Subsequent to the Board remand and VA examination report, however, the Court issued a decision in Correia v. McDonald, 28 Vet. App. 158 (2016), wherein it held that 38 C.F.R. § 4.59 required that all VA examination reports: "(1) carefully note facial expression or wincing on pressure or manipulation and relate that to the affected joint; (2) carefully note crepitation in the soft tissues or joint structures; and (3) test for pain throughout range of motion in various ways." Specifically, "The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." The above VA examination report did not include much of the above testing information. The examiner noted during range of motion testing of the left hip that the Veteran exhibited pain, but did not specifically discuss "facial expression," "wincing," etc. More importantly, the report did not include testing of the right hip and range of motion results appear not to have been provided for the passive range of motion of the left hip. Finally, it is unclear from the report whether the active ranges of motion provided were on weight-bearing or nonweight-bearing. As such, a remand is required for another VA examination.

Accordingly, the case is REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination in order to determine the current severity of his service-connected left hip disability. The electronic claims file must be provided to the examiner for review in conjunction with the examination, and the examiner should note that it has been reviewed. The examiner should detail the Veteran's symptoms such that they can be evaluated under all applicable diagnostic codes. 

In addition, the examiner specifically must, to the extent possible, (1) carefully note facial expression or wincing on pressure or manipulation and relate that to the affected joint; (2) carefully note crepitation in the soft tissues or joint structures; and (3) test for pain throughout range of motion in various ways. Specifically, the left hip joint should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the ranges of motion of the right hip joint. If such testing is not possible, the examiner should document why the testing was not possible. The point at which pain begins must also be noted.

2. After the above is complete, readjudicate the Veteran's claim. If a complete grant of the benefits requested is not granted, issue a supplemental statement of the case (SSOC) to the Veteran and his representative, and they should be given an opportunity to respond, before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
BETHANY L. BUCK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs